**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | **Case No. 1:22-cr-31-FYP** |
| **v.** | : | |
| | : | |
| **BILLY KNUTSON,** | : | |
| | : | |
| **Defendant.** | : | |

**GOVERNMENT'S SENTENCING MEMORANDUM**

The United States of America, by and through the United States Attorney for the District of Columbia, respectfully submits this sentencing memorandum in support of its request that the Court sentence Billy Knutson to six months of incarceration, one year of supervised release, 60 hours of community service, and $500 in restitution.

I.      **Introduction**

Billy Knutson, a violent felon who continues to glorify violence and civil war, participated in the January 6, 2021 attack on the United States Capitol—a violent attack that stopped the certification of the 2020 Electoral College vote count, injured more than one hundred police officers, and resulted in more than 2.7 million dollars in losses.[1]

On April 13, 2022, Knutson pleaded guilty to one count of entering and remaining in a restricted building or grounds, in violation of 18 U.S.C. § 1752(a)(1).  As explained below, a sentence of six months of imprisonment (within the lower half of the Sentencing Guidelines Range identified in the PSR) followed by one year of supervised release is appropriate in this case because the defendant, despite previously being sentenced to prison for five years for felony assault and

---

[1] As of April 5, 2022, the approximate losses suffered as a result of the siege at the United States Capitol was $2,734,783.15.  That amount reflects, among other things, damage to the United States Capitol building and grounds and certain costs borne by the United States Capitol Police.

1

intimidation with a dangerous weapon, publicly promoted violence and civil war before and after he entered the Capitol Building through a broken window and encouraged resistance against police as part of a riot aimed at overturning a Presidential election.

The defendant's conduct on January 6, like the conduct of hundreds of other defendants, took place in the context of a large and violent riot that used its size to overwhelm police, breach the Capitol, and derail the proceedings. Each rioter's participation was an integral part of the effort to cancel the election certification, and Knutson's actions, in concert with those of so many others, caused the riot to succeed temporarily in that effort. *See United States v. Matthew Mazzocco*, 1:21-cr-00054 (TSC), Tr. 10/4/2021 at 25 ("A mob isn't a mob without the numbers. The people who were committing those violent acts did so because they had the safety of numbers.") (statement of Judge Chutkan). Knutson's participation in a riot that actually succeeded in halting the Congressional election-certification, combined with his violent criminal history, his celebration and endorsement of the violence on January 6, and his public condoning of future violence—including gun violence—renders a significant jail sentence both necessary and appropriate in this case.

## II.     Factual and Procedural Background

As an initial matter, the government refers the Court to the general summary of the attack on the U.S. Capitol. *See* ECF 24 (Statement of Offense), at 1-3. As stated above, that riot could not have occurred without rioters, and each rioter's actions—from the most mundane to the most violent—contributed to the violence and destruction of that day. But Billy Knutson was not merely a face in the crowd on January 6.

Knutson's conduct related to the Capitol riot neither began nor ended on January 6. *See* ECF 24 at ¶¶ 9-10. First, he published a video in December 2020 in which he states, "I'm locked

and loaded ready for a civil war . . . .   We Proud Boys ready for a civil war; 70 million armed civilians y'all don't really wanna brawl."  *Id.* at ¶ 10.[2]

On January 6, 2021, Knutson climbed through a broken window next to the Capitol's Senate Wing Doors around 3:32 p.m.  The following images show him climbing through the broken window to enter the Capitol and then turning around apparently to offer a hand to help another rioter climb through the window:



The source video for the images above is Exhibit 1 to this memorandum.

The following image shows Knutson (circled in red) moments after he climbed through the broken window:

---

[2]  Knutson published that <u>video</u> to his YouTube channel, "Playboy The Beast – Official," on December 13, 2020.  As of July 18, 2022, that channel had more than 17,000 subscribers, and the video had more than 251,580 views.



Closed-circuit video footage shows him spending several minutes inside the Capitol building. At times, he used a mobile phone apparently to record and/or livestream video, and/or to take photographs inside the Capitol. He then exited the Capitol through the Senate Wing Doors. *Id.* at ¶ 8. While outside on Capitol grounds, Knutson was more animated. During one video that he recorded of himself, he shouts, "Police out there fuckin' with somebody! Go! Go! Go!," and then joins in a "Stop the steal!" chant with other rioters. *See* Exhibit 2. The following image is from that video:



Although the defendant did not, to the government's knowledge, commit any acts of violence at the Capitol, he later used his popular online platform, in connection with his participation in the January 6 riot, to promote not just violence but mortal combat in support of his perverse brand of "patriot[ism]."  ECF 24 at ¶ 9.  Specifically, the defendant published a music

video in April 2021 in which he makes several comments about the events of January 6, 2021 at the Capitol, including the following:

- "The media's been trying to demonize us about the events of January 6th, spreading fake news and propaganda as they always have."

- "We never gon' surrender; these patriots on a mission."

- "We don't wanna go to war but we gotta stand strong; we ain't never backin' down." (This refrain is repeated many times.)

- "Fuck 'em all, fuck 'em all; it's a lost cause now.  Line 'em up like dominos and watch 'em all fall down."  (This refrain is repeated several times.)

- "If you're not gonna fight for us then we have no choice but to band together and fight for ourselves."  (This was followed immediately by footage of rioters throwing objects (including a metal folding chair) at a police line at the Capitol on January 6, 2021).

- "We may have lost the battle but this fight is far from over.  Give me freedom or give me death."  (He makes throat-slitting motion as he says the second sentence).

- "Said I'm ready for a war and what I said I really meant it."

- "If the price of freedom's blood then I'm down to pay the fee."

- "You try to take away our rights we gonna greet you with guns."  (As animated bullets rain down on the screen).

*Id.*  As of July 18, 2220, this video had more than 91,780 views.

The following image is a screenshot of the "greet you with guns" line referenced above:



*The Charges and Plea Agreement*

On January 10, 2022, Knutson was charged by complaint with violating 18 U.S.C. §§ 1752(a)(1) & (2) and 40 U.S.C. §§ 5104(e)(2)(D) & (G).  Two days later, he was arrested at his home in South Dakota.  He agreed to be interviewed by FBI agents at the time of his arrest.  During the interview, he identified himself in images recorded at the Capitol on January 6, 2021, and said he had been expecting a visit from law enforcement officers regarding the events of that day.  He further stated that although he was not affiliated with the Proud Boys at the time of the riot, he became affiliated with that group a few weeks later, and that he moved to Mitchell, South Dakota (from North Carolina in late 2021) because the group's state headquarters was located there.

On January 24, 2022, he was charged by Information with the same offenses charged in the complaint and, on April 13, 2022, pleaded guilty to Count One of a Superseding Information charging him with entering and remaining in a restricted building or grounds, in violation of 18 U.S.C. § 1752(a)(1).  In his plea agreement, Knutson agreed to pay $500 in restitution to the Architect of the Capitol.

### III.   Statutory Penalties

Knutson is subject to a sentence of imprisonment of up to one year.  18 U.S.C.

§§ 1752(a)(1) & (b)(2).  The Court also may impose a fine up to $100,000, pursuant to 18 U.S.C.

§ 3571(b)(5), and a term of supervised release of not more than one year, pursuant to 18 U.S.C.

§ 3583(b)(3).  The defendant must also pay restitution under the terms of his plea agreement. *See*

18 U.S.C. § 3663(a)(3); *United States v. Anderson*, 545 F.3d 1072, 1078-79 (D.C. Cir. 2008).

### IV.   The Sentencing Guidelines and Guidelines Analysis

As the Supreme Court has instructed, the Court "should begin all sentencing proceedings

by correctly calculating the applicable Guidelines range." *United States v. Gall*, 552 U.S. 38, 49

(2007).  "As a matter of administration and to secure nationwide consistency, the Guidelines

should be the starting point and the initial benchmark" for determining a defendant's sentence. *Id.*

at 49.  The United States Sentencing Guidelines ("U.S.S.G." or "Guidelines") are "the product of

careful study based on extensive empirical evidence derived from the review of thousands of

individual sentencing decisions" and are the "starting point and the initial benchmark" for

sentencing. *Id.* at 49.

The government agrees with the Sentencing Guidelines calculation set forth in the PSR

(ECF No. 26). According to the PSR, the U.S. Probation Office calculated Knutson's adjusted

offense level under the Sentencing Guidelines as follows:

| | | |
|---|---|---|
| U.S.S.G. § 2B2.3(a) | Base Offense Level (trespass) | 4 |
| U.S.S.G. § 2B2.3(b)(1)(A)(vii) | Specific Offense Characteristics | |
| (occurred at any restricted building or grounds) | | +2 |
| Acceptance of Responsibility (USSG §3E1.1(a)) | | <u>-2</u> |
| Total Adjusted Offense Level | | 4 |

PSR at ¶¶ 33-41.

The U.S. Probation Office calculated Knutson's criminal history category as V, PSR at ¶ 66, and therefore determined his Guidelines imprisonment range to be 4-10 months.  PSR at ¶ 112.  Knutson's plea agreement contains an explicitly non-binding "Estimated Guidelines Range" of 2-8 months, which was based on an "Estimated Criminal History Category" of IV (for "at least 7 criminal history points").  ECF No. 25 at 4.[3]  The PSR correctly calculates Knutson's criminal history category as V (for 10 criminal history points).  The plea agreement did not account for a 2007 Criminal Mischief conviction that became a three-point conviction due to a 2008 probation revocation resulting in a sentence of two years of confinement. PSR at ¶ 53.  The original sentence was two years of confinement suspended to two years of probation, *id.*, which would have rendered the sentence outside the applicable time period set forth in U.S.S.G. § 4A1.2(e). [4]

A Guidelines sentence is appropriate in this case.  "The Guidelines as written reflect the fact that the Sentencing Commission examined tens of thousands of sentences and worked with the help of many others in the law enforcement community over a long period of time in an effort to fulfill [its] statutory mandate."  *Rita v. United States*, 551 U.S. 338, 349 (2007).  As required by Congress, the Commission has "'modif[ied] and adjust[ed] past practice in the interests of greater rationality, avoiding inconsistency, complying with congressional instructions, and the like.'" *Kimbrough v. United States*, 552 U.S. 85, 96 (2007); 28 U.S.C. § 994(m).  In so doing, the

---

[3] The plea agreement states that "the parties are free to argue for a Criminal History Category different from that estimated" in the plea agreement.  *Id.*

[4] Knutson was sentenced for this Criminal Mischief conviction on the same day he was sentenced for committing Assault on Police Officer Resulting in Injury in a separate incident.  For the Assault on Police Officer conviction, Knutson also received a sentence of two years of confinement suspended to two years of probation, which also was revoked in 2008, resulting in a sentence of two years of confinement to run consecutively to the two years of confinement for the Criminal Mischief conviction.  *Id.* at ¶ 55.  Although these two separate felony convictions arose from two separate incidents, they are counted as a single sentence because the sentences were imposed on the same day.  U.S.S.G. § 4A1.2(a)(2)(B).

Commission "has the capacity courts lack to 'base its determinations on empirical data and national experience, guided by professional staff with appropriate expertise,'" and "to formulate and constantly refine national sentencing standards." *Kimbrough*, 552 U.S. at 108. Accordingly, courts must give "respectful consideration to the Guidelines." *Id.* at 101. As the Third Circuit has stressed:

> The Sentencing Guidelines are based on the United States Sentencing Commission's in-depth research into prior sentences, presentence investigations, probation and parole office statistics, and other data. U.S.S.G. §1A1.1, intro, comment 3. More importantly, the Guidelines reflect Congress's determination of potential punishments, as set forth in statutes, and Congress's on-going approval of Guidelines sentencing, through oversight of the Guidelines revision process. See 28 U.S.C. § 994(p) (providing for Congressional oversight of amendments to the Guidelines). Because the Guidelines reflect the collected wisdom of various institutions, they deserve careful consideration in each case. Because they have been produced at Congress's direction, they cannot be ignored.

*United States v. Goff*, 501 F.3d 250, 257 (3d Cir. 2005). "[W]here judge and Commission *both* determine that the Guidelines sentences is an appropriate sentence for the case at hand, that sentence likely reflects the § 3553(a) factors (including its 'not greater than necessary' requirement)," and that *significantly* increases the likelihood that the sentence is a reasonable one." *Rita*, 551 U.S. at 347 (emphasis in original). In other words, "the Commission's recommendation of a sentencing range will 'reflect a rough approximation of sentences that might achieve § 3553(a)'s objectives.'" *Kimbrough*, 552 U.S. at 89.

Here, although the Court must balance all of the § 3553 factors to fashion a just and appropriate sentence, the Guidelines unquestionably provide the most helpful benchmark. As this Court knows, the government has charged a considerable number of people with crimes based on the January 6 riot. This includes hundreds of felonies and misdemeanors that will be subject to

Guidelines analysis.  In order to reflect Congress's will—the same Congress that was targeted by this criminal incursion—the Guidelines will be a powerful driver of consistency and fairness moving forward.

## V.   Sentencing Factors Under 18 U.S.C. § 3553(a)

With the Guidelines as the starting point, sentencing also is guided by 18 U.S.C. § 3553(a), which identifies the factors a court must consider in formulating a sentence.  Some of those factors include:  the nature and circumstances of the offense, § 3553(a)(1); the history and characteristics of the defendant, *id.*; the need for the sentence to reflect the seriousness of the offense and promote respect for the law, § 3553(a)(2)(A); the need for the sentence to afford adequate deterrence, § 3553(a)(2)(B); and the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct.  § 3553(a)(6).  In this case, as described below, the § 3553(a) factors weigh in favor of a sentence of incarceration within the Guidelines range.

### A.  The Nature and Circumstances of the Offense

The attack on the United States Capitol on January 6, 2021 defies hyperbole.  It was a criminal offense unlike any other in American history, in that it was a direct assault not only on our government, but on our *system* of government:  it was an attack on democracy itself.  Hostile combatants breached and then stormed the halls and chambers of Congress with the sole purpose of reversing, by force, a United States Presidential election.  Using violence and intimidation, the mob of rioters sought to override and invalidate the votes of millions of Americans.  To put it plainly, the events of January 6 may be distilled as follows:  the rioters beat and injured police officers, and destroyed doors and obliterated windows to infiltrate our seat of government, because they wanted to force Congress to cancel the certification of the Presidential election and install the

11

loser of that election as the winner.  By its very nature, the attack eludes comparison to other events.

Although each defendant should be sentenced based on his individual conduct, this Court should note that each person who entered the Capitol on January 6 without authorization did so under the most extreme circumstances.  There were no public tours being given on January 6.  Rather, there were numerous barriers and barricades designed to keep people out of the Capitol.  The roar of the mob and plumes of pepper spray filled the air.  The Capitol grounds were littered with rioters engaged in physical combat with police officers, in clashes often observed or incited by those rioters who did not directly engage in such violence.  No rioter was a mere tourist that day, and no rioter could have entered the Capitol without observing this mayhem.

Additionally, the Court should assess the defendant's individual conduct on a spectrum.  In determining a fair and just sentence on this spectrum, the Court should consider a number of critical factors, including:  (1) whether, when, and how the defendant entered the Capitol building; (2) whether the defendant encouraged violence; (3) whether the defendant encouraged property destruction; (4) the defendant's reaction to acts of violence or destruction; (5) whether during or after the riot, the defendant destroyed evidence; (6) the length of the defendant's time inside the building, and exactly where the defendant traveled; (7) the defendant's statements in person or on social media; (8) whether the defendant cooperated with, or ignored commands from law enforcement officials; and (9) whether the defendant demonstrated sincere remorse or contrition.  Although these factors are neither exhaustive nor dispositive, they help to place each defendant on a spectrum as to his fair and just punishment.

At the onset, had the defendant personally engaged in violence or destruction, he would be facing additional charges and/or penalties associated with that conduct.  The absence of violent or

destructive acts on the part of the defendant therefore is not a mitigating factor in misdemeanor cases, nor does it distinguish the defendant from most other misdemeanor defendants.   The defendant's lack of violence and property destruction is the only reason he was charged only with, and permitted to plead guilty to, a misdemeanor rather than felony.

And although the defendant did not personally engage in violence, he encouraged it.  In December 2020, shortly before the events of January 6, he proclaimed to his online audience that "I'm locked and loaded ready for a civil war."  During the riot on January 6, he shouted, "Police out there fuckin' with somebody!  Go!  Go!  Go!," apparently urging other rioters to go to the aid of those directly embroiled in conflict with police.  Then, in his April 2021 video, he glorified the violence of January 6, stating, "we have no choice but to band together and fight for ourselves," then cutting to footage of rioters throwing objects (including a metal folding chair) at a police line at the Capitol.  He follows that expression by celebrating future political violence, stating that "[i]f the price of freedom's blood then I'm down to pay the fee," and "[y]ou try to take away our rights we gonna greet you with guns" while pantomiming a pistol in each hand as animated bullets rain down on the screen.

Knutson's April 2021 video belies any semblance of remorse for his actions on January 6. To the contrary, his statements make clear that he was *proud* of his participation in the riot.  Indeed, the following statement demonstrates his belief that he and the other rioters did nothing wrong: "The media's been trying to demonize us about the events of January 6th, spreading fake news and propaganda as they always have."  Accordingly, the nature and the circumstances of this offense establish the clear need for a significant sentence of incarceration in this matter.

### B.  The History and Characteristics of the Defendant

Knutson has a long history of violence and other criminal misconduct.  At age 18, he used a knife to assault a victim.  PSR at ¶ 47.  Five months later, he directed abusive epithets and hand gestures at others while displaying a knife.  *Id.* at ¶ 49.  Two weeks after that, while intoxicated, he resisted arrest, kicked out the window of a police car, and spat on a police officer.  *Id.* at ¶ 50.  His five-year prison sentence in 2004 for assaulting three people with a BB gun (hitting one of them in the head with it), PSR at ¶ 51, did not deter him from two future felonies including "repeatedly kick[ing] three uniformed police officers" and multiple misdemeanors, including "thr[owing] a glass liquor bottle and display[ing] a baseball bat at a female victim."  PSR at ¶¶ 55 and 60.  Unlike many January 6 defendants who had no prior criminal record, Knutson has demonstrated over many years a penchant for violence and an unwillingness to comply with the law.  And, as discussed above, Knutson has a recent history of celebrating violence, firearms, and civil war in connection with the events of January 6.

And it gets worse.  In a January 2022 video (titled "MAGA Warfare . . . ") published to his thousands of YouTube subscribers[5] (and available to anyone with an internet connection), Knutson is depicted standing in front of fellow Proud Boys who appear to be brandishing firearms:

---

[5] More than 17,000 as of July 18, 2022.





As of July 18, 2022, the video had more than 56,300 views.

Next, in a video published in February 2022—that is, after his arrest in this case— Knutson states, "I'll be ridin' with that 45—Trump and the handgun" while pantomiming firing a handgun. This is followed immediately by a flash from his hand and then bullet holes on the screen (while a small child appears in his arm):

15



Playboy The Beast "Let's Go Brandon (F.J.B.)" iPhone 11 Music Video



Playboy The Beast "Let's Go Brandon (F.J.B.)" iPhone 11 Music Video

Later in the same video, while referring to "any communist claimin' they antifascist while doin' fascist shit," he says, "I use your face for target practice."   Thus, more than a year since the events of January 6, 2021, and in a time when ideologically motivated gun violence is all too common, Knutson continues to promote and celebrate gun violence to further political goals.  This

Court should impose a sentence of imprisonment that reflects Knutson's violent history and characteristics. His previous sentences have not dissuaded him from using violent rhetoric related to the events and goals of January 6, 2021, in the videos that he continues to broadcast to his 17,300 subscribers.

### C.   The Need for the Sentence Imposed to Reflect the Seriousness of the Offense and Promote Respect for the Law

The attack on the U.S. Capitol building and grounds was an attack on the rule of law. "The violence and destruction of property at the U.S. Capitol on January 6 showed a blatant and appalling disregard for our institutions of government and the orderly administration of the democratic process."[6] As with the nature and circumstances of the offense, this factor supports a sentence of incarceration, as it will in most cases, including misdemeanor cases, arising out of the January 6 riot. *See United States v. Joshua Bustle and Jessica Bustle*, 21-cr-238-TFH, Tr. 08/24/21 at 3 ("As to probation, I don't think anyone should start off in these cases with any presumption of probation. I think the presumption should be that these offenses were an attack on our democracy and that jail time is usually -- should be expected") (statement of Judge Hogan).

### D.   The Need for the Sentence to Afford Adequate Deterrence

Deterrence encompasses two goals:  general deterrence, or the need to deter crime generally, and specific deterrence, or the need to protect the public from further crimes by this defendant. 18 U.S.C. § 3553(a)(2)(B-C); *United States v. Russell*, 600 F.3d 631, 637 (D.C. Cir. 2010).

---

[6] Federal Bureau of Investigation Director Christopher Wray, Statement before the House Oversight and Reform Committee (June 15, 2021), available at https://oversight.house.gov/sites/democrats.oversight.house.gov/files/Wray%20 Testimony.pdf

*General Deterrence*

The demands of general deterrence weigh in favor of incarceration, as they will for nearly every case arising out of the violent riot at the Capitol.  Indeed, general deterrence may be the most compelling reason to impose a sentence of incarceration.  The violence at the Capitol on January 6 was cultivated to interfere, and did interfere, with one of the most important democratic processes we have:  the peaceful transfer of power to a newly elected President.  As noted by Judge Moss during sentencing in *United States v. Paul Hodgkins*, 21-cr-188-RDM:

> [D]emocracy requires the cooperation of the governed.  When a mob is prepared to attack the Capitol to prevent our elected officials from both parties from performing their constitutional and statutory duty, democracy is in trouble.  The damage that [the defendant] and others caused that day goes way beyond the several-hour delay in the certification.  It is a damage that will persist in this country for decades.

Tr. at 69-70.  Indeed, the attack on the Capitol means "that it will be harder today than it was seven months ago for the United States and our diplomats to convince other nations to pursue democracy. It means that it will be harder for all of us to convince our children and our grandchildren that democracy stands as the immutable foundation of this nation."  *Id.* at 70; *see United States v. Thomas Gallagher*, 1:21-CR-00041 Tr. 10/13/2021 at 37 ("As other judges on this court have recognized, democracy requires the cooperation of the citizenry.  Protesting in the Capitol, in a manner that delays the certification of the election, throws our entire system of government into disarray, and it undermines the stability of our society.  Future would-be rioters must be deterred.") (statement of Judge Nichols at sentencing).

The gravity of these offenses demands deterrence.  This was not a protest.  *See United States v. Paul Hodgkins*, 21-cr-188-RDM, Tr. at 46 ("I don't think that any plausible argument can be made defending what happened in the Capitol on January 6th as the exercise of First Amendment rights.") (statement of Judge Moss).  And it is important to convey to future potential

rioters—especially those who hope to subvert the democratic process by force—that their actions will have significant consequences.  There may be no greater factor that this Court must consider.

*Specific Deterrence*

Knutson's continued, widespread dissemination of violent rhetoric demonstrates the need for specific deterrence in this case.  Knutson celebrated the violence of January 6 by publishing his April 2021 video, which was replete with video footage of the riot, and which extolled the virtues of violence and war as methods of resolving political disputes (e.g., "Said I'm ready for a war and what I said I really meant it"; "If the price of freedom's blood then I'm down to pay the fee"; "You try to take away our rights we gonna greet you with guns.").  Most alarmingly, he continued to celebrate and glorify gun violence in February 2022 *while he was on pretrial release for this offense*.

### E.  The Need to Avoid Unwarranted Sentencing Disparities

As the Court is aware, the government has charged hundreds of individuals for their roles in this one-of-a-kind assault on the Capitol, ranging from unlawful-entry misdemeanors, such as in this case, to assault on law enforcement officers, to conspiracy to interfere corruptly with Congress.[7]  Each offender must be sentenced based on his individual circumstances, but with the backdrop of the entire January 6 riot in mind.  Moreover, each offender's case exists on a spectrum ranging from conduct meriting only a probationary sentence to violent or otherwise egregious crimes warranting years of imprisonment.  Misdemeanor cases without aggravating factors generally fall toward the lower end of that spectrum, but misdemeanor breaches of the Capitol on January 6, 2021 were not minor crimes.  And where aggravating factors exist, a sentence of

---

[7] Attached to this sentencing memorandum is a table providing additional information about the sentences imposed on other Capitol riot defendants.  That table also shows that the sentence requested here would not result in unwarranted sentencing disparities.

imprisonment is justified, even in a misdemeanor case and *especially* in a misdemeanor case in which the defendant's *Guidelines range is 4-10 months of imprisonment*.

Although "the Guidelines should be the starting point and the initial benchmark" for determining Knutson's sentence, *United States v. Gall*, 552 U.S. 38, 49 (2007), there are distinctions among Capitol riot defendants—such as how a defendant entered the Capitol, how long he remained inside, the nature of any statements he made (on social media or otherwise), whether he destroyed evidence of his participation in the breach, etc.—that guide courts in imposing sentences "to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct," as required by § 3553(a)(6). Of course, "[t]he best way to curtail 'unwarranted' disparities is to follow the Guidelines, which are designed to treat similar offenses and offenders similarly." *United States v. Bartlett*, 567 F.3d 901, 908 (7th Cir. 2009) (further observing that "[a] sentence within a Guideline range 'necessarily' complies with § 3553(a)(6).").

Even with the Guidelines as a backdrop, sentencing courts are permitted to consider sentences imposed on co-defendants in assessing disparity. *See, e.g., United States v. Knight*, 824 F.3d 1105, 1111 (D.C. Cir. 2016); *United States v. Mejia*, 597 F.3d 1329, 1343-44 (D.C. Cir. 2010); *United States v. Bras*, 483 F.3d 103, 114 (D.C. Cir. 2007). The Capitol breach was *sui generis*: a mass crime with significant distinguishing features, including the historic assault on the seat of the legislative branch of the federal government, the vast size of the mob, the goal of preventing the peaceful transfer of Presidential power, the use of violence by a substantial number of rioters against law enforcement officials, and the large number of victims. Although many of the defendants were not charged as conspirators or as codefendants, the sentences handed down

for Capitol breach offenses is an appropriate group for purposes of measuring disparity of any future sentence.

Although each defendant's history and characteristics are different, and no previously sentenced case contains the same balance of aggravating and mitigating factors present here, the Court is free consider the sentences imposed in cases where similar factors exist.  For example, in *United States v. Kelly O'Brien*, 21-cr-633 (RCL), the defendant pleaded guilty to the same charge as Knutson, her Guidelines range of imprisonment was 2-8 months, and the Court imposed a sentence of 90 days of imprisonment.[8]  There, the defendant promoted violence in social-media posts in December 2020, calling for "patriots" to "rise up" and warning that "[v]iolence can and will break out" on January 6.   Then, on January 10, 2021, she posted, "GOD BLESS THE PATRIOTS . . . .   You have earned upmost respect and loyalty. Thank you Patriots."  Her posts are benign compared to Knutson's explicitly bellicose lyrics and computer-generated bullets and bullet holes.  But, in contrast, she spent more time than Knutson inside the Capitol and was more unruly than he was while there, and she scrubbed her social-media account of inculpatory evidence. She did not have a prior violent felony conviction, however, and Knutson  has multiple prior felony convictions that involved violence.

Another example is the case of *United States v. Karl Dresch*, 21-cr-71 (ABJ).  There, the defendant pleaded guilty to violating 40 U.S.C. § 5104(e)(2)(G), a Class B misdemeanor to which the Guidelines do not apply.  The Court imposed a sentenced of time served, where the defendant had served six months in pretrial detention (six months was the maximum term of imprisonment under the statute of conviction).  Similar to Knutson, Dresch published statements encouraging

---

[8] O'Brien's total adjusted offense level was six (which included a two-level enhancement for obstruction of justice), and she was in criminal history category III.

civil war, albeit more obliquely than Knutson's lyrics, posting on Facebook, "NO EXCUSES! NO RETREAT! NO SURRENDER! TAKE THE STREETS! TAKE BACK OUR COUNTRY! 1/6/2021=7/4/1776."  Like Knutson, Dresch was not particularly boisterous inside the Capitol, and was not inside for very long.  Like Knutson, Dresch had a significant criminal history:  although he did not have a violent felony conviction like Knutson does, he had a 2013 felony conviction for fleeing and eluding arrest after engaging in a high-speed car chase, a 2011 conviction for obstructing an officer, and a 2008 conviction for disturbing the peace.  Unlike Knutson, Dresch was found in possession of four firearms and 100 rounds of ammunition, despite being a felon.

As these examples show, there are infinite combinations of aggravating and mitigating sentencing factors among Capitol Riot defendants—especially because "[n]o limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence."  18 U.S.C. § 3661.  Imposing similar, within-Guidelines sentences for similarly situated defendants who share at least one such factor (e.g., promoting ideologically motivated violence, or having a significant criminal history) reduces the risk of unwarranted sentencing disparities.

In any event, the goal of minimizing unwarranted sentencing disparities in § 3553(a)(6) is "only one of several factors that must be weighted and balanced," and the degree of weight is "firmly committed to the discretion of the sentencing judge."  *United States v. Coppola*, 671 F.3d 220, 254 (2d Cir. 2012).  The § 3553(a) factors that this Court assesses are "open-ended," with the result that "different district courts may have distinct sentencing philosophies and may emphasize and weigh the individual § 3553(a) factors differently; and every sentencing decision involves its own set of facts and circumstances regarding the offense and the offender."  *United States v.*

*Gardellini*, 545 F.3d 108 9, 1093 (D.C. Cir. 2008).   "[D]ifferent district courts can and will sentence differently—differently from the Sentencing Guidelines range, differently from the sentence an appellate court might have imposed, and differently from how other district courts might have sentenced that defendant." *Id*. at 1095.

### VI.    Conclusion

Knutson's Guidelines range is 4-10 months of imprisonment.   An analysis of the § 3553(a) factors calls for a prison sentence longer than the bottom of that range.   Specifically, Knutson's glorification of gun violence in both the post-riot and post-*arrest* videos he published to his thousands of fans evinces a particular need to protect the public, promote respect for the law, and deter future crime.   In light of the numerous acts of violence committed by rioters on January 6, Knutson's continued promotion of violence to resolve political disagreements demonstrates a lack of remorse for participating in that riot and a failure to appreciate the gravity of the harm it caused. Accordingly, the government recommends that this Court sentence Billy Knutson to six months of incarceration, within the lower half of the Sentencing Guidelines Range identified in the PSR, one year of supervised release, 60 hours of community service, and $500 in restitution.

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney
DC Bar No. 481052


By:      /s/ Joseph DeGaetano
JOSEPH DEGAETANO
TN Bar No. 021448
Assistant United States Attorney
District of Columbia
Capitol Riot Detailee
555 4th Street, NW
Washington, D.C. 20530
Telephone No. (423) 385-1345
Joseph.DeGaetano@usdoj.gov